Parkison *v.* Thompson.

---

## PARKISON, TREASURER, *v.* THOMPSON.

[No. 20,401. Filed February 1, 1905. Petition to modify overruled May 11, 1905.]

1. NEW TRIAL.—*"Findings" of the Court.*—*Not Sustained by Evidence.*—*Contrary to Law.*—The word "finding," as used in a motion for a new trial, is the equivalent of the word "decision," as used in the statute setting forth the grounds for a new trial, and properly presents the question for a review of the evidence. p. 617.

2. STATUTES.—*Construction.*—*Appellate Procedure.*—*Weighing Evidence.*—The act of 1903 (Acts 1903, p. 338, §8), providing that the

Parkison *v.* Thompson.

Supreme and Appellate Courts, when required, shall weigh the evidence on appeal and award judgment accordingly, applies ·only to cases of exclusively equitable jurisdiction. p. 618.

3. APPEAL AND ERROR.—*Weighing Evidence.*—*How Assigned on Appeal.*—An assignment of error that the court erred in overruling appellant's motion for a new trial is sufficient to entitle appellant to have the evidence weighed by the Supreme and Appellate Courts as provided in section eight, Acts 1903, p. 338, where one reason assigned in the motion for a new trial is that the decision is not sustained by sufficient evidence. p. 618.

4. STATUTES.—*Construction.*—*Appellate Procedure.*—*Weighing Evidence.*—Acts 1903, p. 338, §8, was intended to abrogate the rule that the Supreme and Appellate Courts could not weigh the evidence, but it does not mean to grant a trial *de novo*, nor that the courts on appeal should give no consideration to the decision below, nor to invest such courts with original jurisdiction in such causes. p. 619.

5. APPEAL AND ERROR.—*Weighing Evidence on Appeal.*—*Burden.*—*Presumption.*—Under the act of 1903 (Acts 1903, p. 338, §8) the party insisting that the weight of evidence is against the decision of the court below has the burden of establishing such fact clearly, the presumption being that the decision below is correct. p. 625.

6. SAME.—*Weighing Evidence.* — *Rules for Guidance.* — In weighing evidence on appeal under the act of 1903 (Acts 1903, p. 338, §8) the Supreme and Appellate Courts will give sufficient latitude to the decision below to account for the personal observations of such court in the trial, and if there be substantial conflict in the evidence, the decision below will not be set aside. p. 625.

7. CONSTITUTIONAL LAW.—*Supreme Court.*—*Rules.*—*Inherent Powers.*—The Supreme Court has an inherent right to prescribe rules regulating the conduct of its business, and while the legislature may prescribe rules of pleading and practice, it can not prescribe the mode and manner in which the courts shall discharge their judicial duties. p. 626.

8. TAXATION.—*Omitted Property.*—*Revaluation.*—*Powers of Auditor.*—The county auditor has no power to revalue property once listed, his power being confined to the listing of omitted property. p. 628.

9. SAME.—*Wrongful Listing.*—*Burden.*—The burden is on the taxpayer who alleges it, to show that the auditor has listed property which has already been listed and the taxes paid thereon, the presumption being that the auditor did his duty. p. 628.

10. SAME.—*Wrongful Listing by Auditor.*—*Evidence.*—Where the evidence without substantial conflict shows that plaintiff in his tax schedule immediately after the words "all notes secured by mortgage" wrote "$16,000" and in the column headed "valuation by party" wrote "$13,000," and such plaintiff actually owned notes of the face value

of $29,000, secured by mortgage, a finding for plaintiff that he had listed all of his notes secured by mortgage is against the weight of the evidence.   p. 629.

From Jasper Circuit Court; *Timothy E. Howard,* Special Judge.

Action by Simon P. Thompson against Robert A. Parkison as treasurer of Jasper county.   From a decree for plaintiff, defendant appeals.   Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Reversed.*

*J. Frank Hanly, Will R. Wood, Charles E. Mills* and *W. H. Parkison,* for appellant.

*William Darroch, Frank Foltz, H. R. Kurrie* and *C. G. Spitler,* for appellee.

JORDAN, J.—Appellee instituted this action in the lower court perpetually to enjoin appellant, the treasurer of Jasper county, from enforcing the collection of certain taxes arising out of assessments made by the county auditor on certain personal property, consisting of money, notes secured by mortgage, and other credits belonging to appellee, which, as claimed by the auditor, he had omitted to list and return for taxation.   A change from the regular judge was taken, and a special judge was called who tried the cause. The court upon request made a special finding of facts and stated conclusions of law thereon adversely to appellant. Over the latter's motion for a new trial, assigning as reasons therefor, "(1) that the findings of the court are contrary to law; (2) that the findings of the court are not supported by sufficient evidence; (3) that the findings of the court are contrary both to law and evidence"—the court rendered judgment whereby it perpetually enjoined the defendant from collecting the taxes in controversy, and ordered and decreed that the same be canceled.

From this judgment appellant appeals, and assigns as errors, "(1) that the court erred in overruling the motion for a new trial; (2) that the court erred separately and sev-

erally in each of its conclusions of law." This latter assign-
ment of error is not discussed or urged for reversal; hence
it will be deemed to have been waived.

Under the first assignment the only claim or contention
urged for a reversal of the judgment is that the findings
of the court are not supported by sufficient evidence, and
that they are contrary to law. The evidence, in the main,
upon which the cause was tried and determined, consists
of that which was given orally before the court by witnesses
who testified in behalf of each party. All of the evidence
has been incorporated into a bill of exceptions, and by this
method has been properly certified to this court.

The complaint consists of ten paragraphs. The first para-
graph embraced each of the years for which the taxes in
question were sought to be enjoined, viz., 1892 to 1897, 1899,
1900. By it the official character of appellant is shown,
and it is further disclosed therein that appellee was, at the
commencement of the action, and had been continuously
from the year 1890, a resident taxpayer of Rensselaer,
Marion township, Jasper county, Indiana.

It is further shown that the auditor of said county on
October 30, 1902, entered of record in his office a finding
to the effect that for each of said years from 1892 to 1897,
1899, 1900, the plaintiff had omitted from his tax schedule
personal property of a certain value, and that said auditor
assessed and extended the tax on said property on the
proper tax duplicate of said county, giving the particular
amount of taxes so extended or assessed for each year. It
is averred that the assessments were described in the find-
ings made by the auditor as being on moneys, mortgage
notes, money loaned and credits. It is further charged that
such assessments were all made solely and exclusively on
money loaned and on notes secured by mortgage, and that
the said several findings of the auditor were false; that
appellee had in fact listed and returned for each of said
years all of his personal property; and that the same had

been valued by the proper taxing officer at a time when such officers had the power to value each property for the purpose of taxation.

It is further alleged that no item of personal property was omitted by the plaintiff from his tax schedule for any one of the years mentioned; that a valuation had been made on each item of his property by the proper township assessor at the time it was listed by the plaintiff. The valuations fixed by the auditor, it is charged, were simply valuations of property which had been returned by the plaintiff and valued for taxation by said assessor, and were not valuations or assessments of omitted property. It is alleged that all of the taxes levied and due upon the personal property of the plaintiff for each of the said years have been paid, and that he owes no taxes whatever, and that said auditor has no right and power to revalue and reassess said property and that his act in the assessment thereof is void. It is alleged that the defendant, as the treasurer of the county of Jasper, will collect said taxes so levied and assess as aforesaid by a levy upon and the sale of the personal property of the plaintiff, unless restrained and enjoined by the court.

The second paragraph of the complaint relates to each of the years named in the first paragraph, and proceeds upon the theory, and in effect charges, that the auditor of said county, instead of placing any omitted property belonging to the plaintiff upon the tax duplicate, had merely increased the value placed by the proper township assessor on certain property—namely mortgage notes, etc.—listed and returned by appellee for taxation for each of said years. It is averred that no specific note or notes were omitted to be returned by appellee to said assessor for any of the years in question, and that the taxes placed on the tax duplicate by the said auditor on October 30, 1902, were simply the result of a mere calculation on the fixed value of all of plaintiff's mortgage notes as a whole, each and all of which

had been valued by the proper township assessor for each
of the aforesaid mentioned years; that there were no valua-
tions by the auditor of any distinct property of appellee
for any of said years, and that all of said property had been
duly valued by the regular township assessor, and the value
thereof reported for each of said years, and the taxes there-
on were assessed against the plaintiff, all of which taxes
the plaintiff, before the commencement of this action, has
paid. It is alleged that the attempt of said auditor to re-
value said plaintiff's property was without authority of
law, and it is therefore void, but that said taxes appear of
record charged against plaintiff as due and unpaid, and
that the defendant, unless restrained from so doing, will
levy upon and sell plaintiff's property in satisfaction of
said taxes.

The other paragraphs of the complaint allege in the main
facts similar to those in the first and second paragraphs
of the complaint, and each proceeds upon the theory that
the auditor had revalued and increased the valuation of
appellee's property listed by him for taxation in each of
the said years over and above the value placed thereon by
the township assessor at the time it was listed and returned
for taxation.

Appellant answered the complaint by a general denial.
By the special findings it is disclosed that the plaintiff from
the year 1891 to 1901 has been a resident of the city of
Rensselaer, Marion township, Jasper county, Indiana. The
court further finds that for the year 1892, and each suc-
ceeding year thereafter until the year 1900, inclusive, the
plaintiff listed and returned all of his personal property for
taxation to the assessor of said township, and prior to the
beginning of this action he had paid the taxes assessed
against him for his property so returned for each of the
aforesaid years. During the aforesaid years plaintiff was
engaged in buying and selling swamp and wild lands in
said county, the sales of which were made on long time

at six per cent. interest, and the unpaid purchase money was secured by notes and mortgages, which mortgages were duly recorded in said county. These mortgages were liens upon lands sold, and were only security for the payment of the purchase-money notes.

During the years 1895 and 1896 the plaintiff was in partnership with James L. Babcock, in the live-stock business in Union township, in said county, which township was the situs of said firm, and in said township said Babcock listed the personal property belonging to the said firm for taxation. The plaintiff was also a partner of the firm of Thompson & Bros., the personal property of which firm was assessed in said city of Rensselaer, and all of the said firm's taxes for each of the years from 1892 to 1900, inclusive, have been paid.

It is found that all of the taxes mentioned in the complaint, and claimed by the defendant to be due from plaintiff, were assessed on October 30, 1902, on property claimed to have been omitted as the individual property of the plaintiff, and not as the property of either of the said firms or partnerships.

It further appears by the findings that the board of commissioners of said county employed Fleener & Carnahan as "ferrets" to discover property omitted from taxation, and on March 17, 1902, one James B. Workman, acting for them, caused a notice to be issued to the plaintiff in the name of the county assessor, claiming therein that the plaintiff owned "moneys, loans and credits" which had not been listed and assessed for taxation, the separate amount for each of the years being stated in the findings. The plaintiff appeared before the said Workman, and explained to him what was the face value of the unpaid notes on the 1st of April of each of the said years in question.

On October 30, 1902, the county auditor, by a written finding made by him, returned against appellee for taxation the following amounts as moneys, mortgage notes, moneys

loaned and credits, viz.: For the year 1892, $3,568; 1893, $544; 1894, $6,451; 1895, $3,933; 1896, $13,605; 1897, $13,040; 1899, $1,120; 1900, $1,780—and assessed taxes thereon against appellee at the rate prevailing for each of said years in the city of Rensselaer, and placed and extended the same on the tax duplicate in the hands of the defendant for immediate collection. The defendant, at the time of the commencement of this action, was claiming the right immediately to collect said taxes so assessed from the plaintiff as taxes due and unpaid.

The court finds that for the years 1892 to 1900, inclusive, the plaintiff each year listed and returned for taxation all moneys on hand and on deposit, and moneys loaned by him, and credits owned and held by him, and that the same were listed and valued for taxation by the township assessor. It is shown by the special findings that the face value of the plaintiff's notes for the year 1892 was $16,583, and the township assessor had fixed the value at $12,000 as of April 1 of said year. All of the plaintiff's mortgage notes owned by him on April 1, 1892, were duly listed for taxation, and were valued and reported by the township assessor at $12,000.

It is further found that no mortgage or other notes owned or held by plaintiff on the 1st day of April of any of the aforesaid years were omitted to be listed and returned for taxation. For each of said years all moneys on hand or on deposit, and all money loaned and credits owned by the plaintiff, were listed by him and returned for taxation, and were valued by the proper township assessor. It is shown that for the year 1893 the face value of all of plaintiff's mortgage notes was $15,760, and that the same were valued by the township assessor at $13,000, as of April 1, 1893. For the year 1894 the face value of all of plaintiff's mortgage notes as a body was $18,738; these notes were valued by the township assessor for taxation at $9,250, as of April

1 of that year.  For the year 1895 the face value of plaintiff's mortgage notes listed as a body was $35,625, and these were valued by the assessor at $23,400, as of April 1, 1895.  For the year 1896 the face value of plaintiff's mortgage notes as a body was $41,365, and these were valued by the township assessor at the sum of $17,000, as of April 1 of said year.  For the year 1897 the face of plaintiff's mortgage notes was, as a body, $28,470, and these were valued at the aggregate sum of $13,000 by the plaintiff, and were valued at the same amount by the township assessor.  The face of the plaintiff's mortgage notes for 1899 was $33,541; these notes were all valued as a body by the plaintiff and by the township assessor at the aggregate sum of $28,000, as of the date of April 1, 1899.  For the year 1900 the face of the plaintiff's mortgage notes as a body was $28,062, and these were valued as a body by the township assessor at the sum of $23,000, as of the date of April 1 of that year.

1.  It will be observed that the reasons assigned by appellant in his motion for a new trial were (1) "that the findings of the court are contrary to law;" (2) that the findings of the court are not supported by sufficient evidence.  It is contended by appellee's counsel that these grounds present no question for a review of the evidence, because the word "decision" is not employed.  It is true that the grounds for a new trial, as provided by subdivision six of §568 Burns 1901, §559 R. S. 1881, are "that the verdict or decision is not sustained by sufficient evidence, or is contrary to law."  It, however, has been held by this court that the word "decision" is employed in the above provision of the statute in the sense of finding when the cause has been tried by the court.  *Weaver* v. *Apple* (1897), 147 Ind. 304, and cases there cited; *Gates* v. *Baltimore, etc., R. Co.* (1900), 154 Ind. 338; *Hubbs* v. *State, ex rel.* (1898), 20 Ind. App. 181.  In *Young* v. *Berger* (1892),

132 Ind. 530, it was held that the ground assigned in a motion for a new trial, that the special finding was not sustained by sufficient evidence, was proper.

2. Appellant's counsel, in their argument, invoke the benefit of the provisions of section eight of an act of the legislature "concerning proceedings in civil procedure," approved March 9, 1903 (Acts 1903, p. 338). They insist that, under the provisions of this section, this court in this appeal is required carefully to consider and weigh the evidence given before the trial court as the same has been incorporated into a bill of exceptions and properly certified. Section eight of the above act reads as follows: "In all cases not now or hereafter triable by a jury, the Supreme and Appellate Courts shall, if required by the assignment of errors, carefully consider and weigh the evidence and admissions heard on the trial when the same is made to appear by a bill of exceptions setting forth all the evidence given in the cause, and if on such appeal it appears from all the evidence and admissions that the judgment appealed from is not fairly supported by, or is clearly against the weight of the evidence, it shall be the duty of such court to award judgment according to the clear weight of the evidence, and affirm the judgment or return said cause to the trial court with instructions to modify the judgment or grant a new trial; or to enter such other judgment or decree as to such court of appeal may seem right and proper upon the whole case." As to whether the statute is intended to embrace all special statutory proceedings wherein a trial by jury is expressly or impliedly denied it is not necessary now to determine. That it does, however, apply to suits or actions which were formerly of exclusive equitable jurisdiction, as is the case at bar, wherein the right to a jury trial is denied by §412 Burns 1901, §409 R. S. 1881, is evident.

3. We are confronted at this point with the insistence of appellee's learned counsel that the provisions of the act

can not be invoked under appellant's general assignment of errors. We can not concur with counsel in this view of the question. As previously shown, appellant, under the reasons assigned by him for a new trial, challenged the sufficiency of the evidence to sustain the decision. He has in this court assigned as error the overruling of the motion for a new trial. This, we think, is sufficient, so far as an assignment of error is concerned, to enable a party on appeal to invoke the benefit of the statute.

4. The evidence in this case, in the main, consists of that given before the court *viva voce* by witnesses who testified in behalf of the respective parties. The practice formerly in chancery courts was peculiar in the method of taking evidence. The proof in a suit in these courts was made by means of depositions, and was not given or made by means of witnesses testifying orally at the trial. But under our civil code, which has brought about a fusion of legal and equitable procedure, there is no distinction, in respect to the method of making proof, between a case at law and one which formerly was of exclusive equitable jurisdiction. If the method of making proof in cases tried in a court of chancery were the only one now authorized in such cases, we would not be subjected to much difficulty in weighing the evidence on appeal in a cause of equitable jurisdiction, for it is manifest that where the evidence given in a case in the lower court is wholly documentary, in such a case on appeal this court might be said to be in as good a position to determine the weight of the evidence as was the trial court; but, where the evidence is in whole or in part parol or oral, we would, to say the least, be confronted with quite a difficult proposition if required to weigh the evidence upon the face of the record and decide the question of its preponderance. It has been universally asserted by this court as a reason for the rule which controls it in reviewing the evidence on appeal that it is not in the same position to determine the credibility of the witnesses as the trial court.

The rule which controls the latter court in deciding a motion for a new trial on the ground that its decision is not sustained by sufficient evidence is quite different from the one by which we are governed in deciding the same question when presented on appeal. The reasons are obvious: The trial judge can avail himself of his senses of hearing and seeing. He both sees and hears the witness testifying on the witness-stand. He can observe his looks, his manner and conduct, his intelligence or ignorance, his powers of perceiving facts, his capacity for remembering and stating them. He is enabled to know whether the witness testifies willingly or reluctantly. In a word, it may be said that the trial judge has virtually all of the means by which he can test the credibility which should be accorded to any or all of the witnesses who testify in a case. The judges of this court, however, on appeal, are deprived of all of the above-mentioned tests or means to guide them in ascertaining the credibility of the witnesses, or in determining the weight to be given their testimony. The tests which we have mentioned are all of more or less value in measuring the weight of evidence, for it is certainly true that the value of a witness's testimony depends, to a great extent, upon his conduct and appearance when testifying, his candor, his intelligence or his ignorance, his memory or lack of memory in regard to the matters about which he testifies, etc. On appeal we have nothing but the inanimate record of the evidence before us, in which the words of one witness may mean the same as the words of another.

The disadvantages under which this court is placed for deciding questions of fact are so obvious that merely suggesting them will appear to be sufficient to disclose the impracticability of any rule or law which exacts of the court the duty of deciding questions of fact on appeal which depend on parol or oral evidence.

The statute must be given a reasonable construction, and no such interpretation should be placed thereon as will make

the action of the legislature in enacting it appear absurd. Its language is: "The Supreme and Appellate Courts shall * * * carefully consider and weigh the evidence." The word "shall" is manifestly used in the statute in the sense of "may." It was intended, no doubt, to abrogate the judicial rule by which we have heretofore been bound, and authorize us to weigh the evidence and decide questions of fact on appeal. But certainly the legislature in passing the act did not intend that there should be a trial *de novo* in this or the Appellate Court upon the evidence in the case. It was not contemplated that we should take up and examine parol or oral evidence incorporated into a bill of exceptions, and pass upon its weight, without any consideration or reference to the decision of the trial court, or the means afforded that tribunal for deciding questions of fact. Under our Constitution the legislature can not invest this court, in a cause appealed to it, with both appellate and original jurisdiction.

While it is true that §4 of article 7 of the State's Constitution provides that: "The Supreme Court shall have jurisdiction coextensive with the limits of the State in appeals and writs of error, under such regulations and restrictions as may be prescribed by law. It shall also have such original jurisdiction as the general assembly may confer," nevertheless this provision was not intended to authorize the legislature to clothe the Supreme Court, in cases appealed to that tribunal from the lower court, with both appellate and original jurisdiction. The provision in question does not contemplate any such dual jurisdiction in the same case. That the legislature may, under this provision, invest the Supreme Court with original jurisdiction in certain cases is manifest, but such original jurisdiction would necessarily extend to and include the entire cause.

In Elliott, App. Proc., §28, it is said: "As the Supreme Court is essentially an appellate tribunal its powers are necessarily such as are inherent in such a tribunal or are

Parkison *v.* Thompson.

conferred upon it by constitutional statutes, and its modes of procedure are those of a tribunal of its rank and character. It does not proceed as a trial court but as a court of errors or appeals. Questions of fact may, in rare instances, require decision as original questions, but even in hearing and deciding such questions it does not proceed as a trial court of original jurisdiction. All questions of fact are, of necessity, connected with the appellate power of the court, and, therefore, are not, except possibly in rare cases where the court is invested with original jurisdiction, to be disposed of as independent issues originating in a trial court. It seems clear that, whether trying questions of fact or of law, the Supreme Court acts as an appellate tribunal unless the case is one where a valid statute expressly or impliedly requires it to act as a court of original jurisdiction."

In 1860 the legislature of Wisconsin passed an act which provided that any question of fact decided upon trials by the court, or by a referee, might be reviewed by the supreme court when exceptions to the findings of fact had been duly taken by either party and returned. This act came before the supreme court in the cases of *Snyder* v. *Wright* (1861), 13 Wis. 689; *Fisher* v. *Farmers Loan, etc., Co.* (1866), 21 Wis. 74; *Garbutt* v. *Bank, etc.* (1867), 22 Wis. 384; *Swift* v. *Agnes* (1873), 33 Wis. 228; and *Paige* v. *McMillan* (1877), 41 Wis. 337. That court in these cases apparently was of the opinion that it became its duty under the statute to weigh the evidence and to determine, to an extent, at least, questions of fact.

In *Snyder* v. *Wright, supra,* the supreme court severely criticised the statute, and doubted the wisdom and propriety of its passage. Subsequently this act, in 1893, was amended to provide as follows: "All questions of law or fact presented by the record upon such appeal or writ of error, shall be reviewed by the supreme court, and it shall be the duty of the supreme court to examine and review

the evidence when the same is preserved by a bill of exceptions, and give judgment according to the right of the cause, regardless of the decision upon questions of fact or law made by the court below, according to law and equity." Laws of Wis., 1893, chap. 242.

In the appeal of *Klein* v. *Valerius* (1894), 87 Wis. 54, 22 L. R. A. 609, this provision of the statute was held to be unconstitutional; the court asserting that so far as it attempted to give it original jurisdiction in cases in which, under the constitution, it only had appellate jurisdiction, the act was null and void.

The legislatures of North and South Dakota appear to have copied or borrowed the Wisconsin statute as enacted in 1860, and incorporated it into the laws of each of these respective states, by providing that "Any questions of fact or of law, decided upon trials by the court or by referee, may be reviewed when the exceptions to the findings of fact have been duly taken by either party and returned." This act was reviewed and construed by the supreme court of North Dakota in the appeal of *Jasper* v. *Hazen* (1894), 4 N. Dak. 1, and by the supreme court of South Dakota in *Randall* v. *Burk Tp.* (1893), 4 S. Dak. 337.

In *Jasper* v. *Hazen, supra,* the court, in passing upon the provisions of the statute, said: "That the statute ingrafted a change upon the former practice is certain.   *   *   *   It did not intend that this court should take up the parol evidence as preserved in the bill of exceptions, and pass upon it without any reference to the decision below. Rather, it intended—and such, we think, is the effect of the Wisconsin decisions—that, when a finding of fact made by the trial court was brought into this court for review upon proper exceptions, it should come like a legal conclusion, with all the presumptions in favor of its correctness, and with the burden resting upon the party alleging error of demonstrating the existence of such error.   He must be able to show this court that such finding is against the

preponderance of the testimony, and where the finding is based upon parol evidence, it will not be disturbed, unless clearly and unquestionably opposed to the preponderance of the testimony. * * * Of the probative force and value of depositions and documentary evidence, this court may be in as good situation to determine as the trial court; and when the finding is based upon this character of evidence, and it reasonably appears to this court, upon a full examination thereof, that the finding is against the weight of the evidence, we think it would be our duty, under the statute, to disturb the finding." The court, after referring to the fact that in order to ascertain the truth from parol evidence it was essential that the tribunal which is to pass upon such evidence should see and hear the witness upon the stand, etc., further said: "As the finding of fact based upon parol evidence comes to us with all presumptions in favor of its correctness, we must, in reaching our conclusions, throw into the balance in support of the finding, not only the full effect of the printed evidence in the bill of exceptions, but also the full effect of the inferences and impressions that might reasonably and legitimately be drawn from personal observation of the witnesses; and it is only when the scales unmistakably incline the other way, when the finding is thus weighed, that we are warranted in disturbing it."

The supreme court of South Dakota, in *Randall* v. *Burk Tp., supra,* in placing a construction on the same statute, held that the rule laid down by Justice Cole in *Fisher* v. *Farmers Loan, etc., Co., supra,* to the effect that the court was required "to decide questions of fact according to the weight of the evidence," was probably too broad and not strictly correct. The court further said in that case: "This court will not decide the case upon the weight of evidence, as a trial court may do, but will only reverse the decision of the trial court where there is a clear preponderance of evidence against the decision of the court below. The pre-

sumption is in favor of the decision of the trial court upon the weight of evidence, which this court will respect, and therefore it is only when this court finds there is a clear preponderance of evidence against such a decision that the presumption above stated will be overcome.".

5. These decisions are certainly influential upon the question of the construction which should be placed on the statute here involved. A reasonable interpretation of the act requires us to hold that the party who appeals and seeks to avail himself of its provisions will have the laboring oar, and the burden will rest upon him clearly to establish that the judgment below is not fairly supported by the evidence, or that it is clearly against the weight of the testimony. The judgment will be presumed to be correct, and will not be disturbed unless it be made to appear to our satisfaction that it is not fairly sustained by the evidence, or is clearly against the weight thereof. *Pollock* v. *Carolina, etc., Loan Assn.* (1897), 51 S. C. 420, 29 S. E. 77, 64 Am. St. 683; *Land Mortgage Co.* v. *Faulkner* (1895), 45 S. C. 503, 23 S. E. 516.

In the case first cited the supreme court of South Carolina, in considering a provision in the state's constitution which provides "that findings of fact as well as of law may be reviewed on appeal," quoted with approval the following from *Land Mortgage Co.* v. *Faulkner, supra:* "When a question of fact has been determined by an intelligent, disinterested, and experienced circuit judge, that certainly affords a reason for believing that his conclusion is correct; and it is incumbent upon the appellant to assume the burden of showing error therein, and unless he sustains that burden, the conclusion of the circuit judge should stand."

6. In passing upon questions of fact, under the act in question, which depend upon oral evidence given before the trial court, we must take into consideration, not only the evidence in the record, but also the means and tests

Vol. 164—40

afforded the trial court for determining the credibility of the witnesses, and the weight to be accorded to their testimony. We must consider and give effect to all inferences and impressions that might have been reasonably deduced by the trial judge by reason of the fact that he saw and heard the witnesses testify, and had the opportunity, by personal observation, to discover any signs of truth or falsehood in respect to their testimony. In a cause where a question of fact or facts depends upon oral testimony for support, and there is a substantial conflict in the oral evidence, under such circumstances, we will not undertake to reconcile the conflicting evidence, for it must be obvious from the position which we occupy that to endeavor to do so would be virtually useless. Were we to attempt, under such circumstances, to reconcile and weigh the evidence, and interpose our judgment in the case for that of the lower court, great injustice might result. *Pollock* v. *Carolina, etc., Loan Assn., supra,* and cases there cited. Certainly absurdity ought not to be imputed to the statute by holding that it contemplates that this court, under conflicting oral testimony, should weigh the evidence contained in the record, and determine questions of fact depending thereon.

7. A party on appeal who seeks the benefit of the provisions of this act must take it subject to the rules of this court. The court's power to prescribe rules regulating the conduct of its business is inherent in the tribunal. It does not depend on any authority granted by the legislature. While the latter may prescribe rules of procedure and pleading by which both courts and the parties in a cause are bound, nevertheless it can not, under the Constitution, encroach on judicial domain by prescribing the manner and mode in which the courts shall discharge their judicial duties. The legislature has no more right to break down the rules prescribed by this court for conducting its official business than the court has to prescribe the mode and manner in which the legislature shall perform its legislative

duties. Elliott, App. Proc., §7 ; *Smythe* v. *Boswell* (1889), 117 Ind. 365, and cases cited; *Ex parte Griffiths* (1889), 118 Ind. 83, 10 Am. St. 107, 3 L. R. A. 398, and cases cited; *Houston* v. *Williams* (1859), 13 Cal. 24, 73 Am. Dec. 565.

In *Smythe* v. *Boswell, supra,* this court, speaking by Elliott, J., as its organ, said : "It is true that the judiciary is an independent department of government, exclusively invested by the Constitution with one element of sovereignty, and that this court receives its essential and inherent powers, rights and jurisdiction from the Constitution and not from the legislature."

We have sometimes thought that perhaps there was some misapprehension upon the part of the legislature in the enactment of statutes in regard to judicial independence; or, in other words, in respect to the encroachment by the legislative department upon the domain of the judiciary. A very instructive paper on judicial independence, prepared by Judge Henry B. Brown, now of the Supreme Court of the United States, will be found in volume 12, page 265, of the American Bar Association of 1889.

Whether the statute in question can be said to be antagonistic in any respect to our Constitution, we do not determine, as that question has not been raised in this appeal.

Having placed a construction upon the statute in question, we next proceed to an examination of the evidence in the record. It appears that the board of commissioners of Jasper county procured an investigation to be made by experts in order to discover whether any of the taxpayers of said county had omitted to list and return property subject to taxation. As a result of this investigation, information was lodged with the county assessor that appellee, for a series of years, had omitted to list and return all of his property. Thereupon that official gave appellee a written notice to appear at a time and place fixed, and show cause why he should not be assessed upon omitted property.

He appeared in person and by an attorney, and such proceedings were had as resulted in the assessor making a written finding and report, which he filed with the county auditor. By this report it was disclosed that appellee had failed in listing the following sums of his moneys, money loaned, mortgage notes and other credits which he held and owned on .the 1st day of April of each of the following years: 1892, $3,568; 1893, $544; 1894, $6,451; 1895, $3,933; 1896, $13,605; 1897, $13,040; 1899, $1,120; 1900, $1,780. On the finding the county assessor made assessments of taxes upon said omitted property for each of the years. Upon filing the finding and report with the county auditor the latter concurred therein, and adopted the same as his own, and ordered the taxes so assessed to be extended on the tax duplicate against appellee. It is these taxes which appellee seeks to enjoin.

8. His theory, under the facts alleged in the complaint, and likewise under the evidence, is that the taxes in question were not assessed by the auditor upon any omitted property, but are merely the result of a revaluation made by that officer over and above the value fixed by the township assessor upon the mortgage notes and other credits which had been duly listed and returned in each of the aforesaid years. His contention is that he listed and returned for each of the years in question all of his property, including moneys, mortgage notes and other credits, subject to taxation. Certainly the auditor, under the law, was not authorized in the proceedings in question· to change or alter the valuation fixed by the proper township assessor on property listed and returned by appellee. That official's duty, under the statute, is confined to property subject to taxation which has been omitted to be listed and returned by the taxpayer. *Reynolds* v. *Bowen* (1894), 138 Ind. 434; *Florer* v. *Sherwood* (1891), 128 Ind. 495; *Woll* v. *Thomas* (1891), 1 Ind. App. 232.

9. It must be said, however, that in this case all pre-

sumptions are in favor of the correctness of the assessment made by the auditor, and these presumptions continue until the contrary is affirmatively shown by the evidence. If the auditor, instead of assessing omitted property, transcended his power by increasing the value of that which the assessor had placed upon property returned by appellee, then the burden is cast upon the latter to prove that fact in this action. *Saint* v. *Welsh* (1895), 141 Ind. 382; *Buck* v. *Miller* (1897), 147 Ind. 586, 62 Am. St. 436, 37 L. R. A. 384; *Gallup* v. *Schmidt* (1900), 154 Ind. 196; §8642 Burns 1901, Acts 1891, p. 199, §224.

10. In appellee's tax schedule for the year 1897, after the words "All notes secured by mortgage," appear, in his own handwriting, the following figures: "$16,000." Under the caption "Valuation by Party," "$13,000;" "Valuation by Assessor," "$13,000." The assessor apparently having adopted appellee's own valuation for that year. The special finding discloses, and there is evidence to prove, that during the years 1895 and 1896 appellee was in partnership with one James L. Babcock, engaged in the business of farming, and buying and selling live stock in Union township, Jasper county, Indiana, that the business was transacted and carried on in the firm name of Thompson & Babcock. Appellant's counsel contend that the undisputed evidence in the case established that appellee had in bank on the 1st day of April, 1895, the sum of $1,731, which was deposited in the name of said firm. Appellee claimed in his evidence that this money belonged to the firm, and gave this as an excuse for not listing it. It is claimed by appellant that there is no evidence in the record to show that this money was ever listed and returned for taxation by said firm. The contention is advanced that the evidence is insufficient to show in a legal sense that the relation existing between appellee and Babcock was that of a partnership, and therefore it is insisted that the money in question must be considered as that of appellee, which

he omitted to return for taxation for the year 1895. As to whether the relation between appellee and Babcock was, in a legal sense, a partnership is not an essential question to be determined in this action. As shown, the parties carried on the business under the firm name of Thompson & Babcock, and for a series of years held themselves out as a partnership. The firm, through Babcock, as one of the partners, listed and returned each year for taxation property claimed to belong to said partnership. These returns appear to have been accepted by the proper tax officials, and the existence of the firm or partnership seems to have been recognized by these officers. The question as to whether the firm had omitted to return any of its property does not seem to have been included in the investigation made by the assessor and auditor. If it failed to return the money in question, which stood on the books of the bank in its name, then in a proper proceeding it may be called to account for its omission, and the money assessed to the firm as omitted property. In that event, appellee, as between the State and himself, would, under §8423 Burns 1901, Acts 1891, p. 199, §13, be liable for the entire taxes assessed against said partnership. This section provides that "Each partner shall be liable for the whole tax." Counsel for appellant endeavor to show that the findings of the court, to the effect that appellee for the year 1892, and for each successive year thereafter until 1900, inclusive, duly listed and returned for taxation all of his moneys, mortgage notes and credits is not supported by the evidence, but is clearly against the weight thereof.

The fact as to whether appellee listed and returned for taxation all of his mortgage notes, moneys and other credits for each of the years other than 1897 depends, to an extent, upon conflicting evidence. Therefore, under the interpretation which we have placed upon the statute in controversy, we will not undertake to reconcile the conflict or weigh such evidence. Consequently, in view of our conclusion, we

may properly pass to a consideration of the sufficiency of the evidence fairly to support the finding of the lower court for the year 1897. It appears that appellee on the 1st day of April of the latter year had some thirty notes which were secured by mortgages. The face of these notes ranged from $50 to $12,800, aggregating a face value of about $29,000. By §8458 Burns 1901, Acts 1891, p. 199, §48, he was required to list these notes for taxation at their true cash value. In determining such valuation, this section, in effect, provides that the lister shall be governed by what is the true cash value—that is to say, "the market or usual selling price at the place where the property" is liable to assessment—and if there is no market value then he shall be governed by the actual value of the property. The undisputed evidence discloses that appellee, in listing his notes for the year 1897, wrote "$16,000" immediately after the words in the tax schedule, "All notes secured by mortgage." In the column to the right of this amount, under the caption "Valuation by Party," he wrote "$13,000." It may reasonably be inferred from the fact that he wrote $16,000 after the words "All notes secured by mortgage" that these figures were intended by him to represent the face amount of all mortgage notes held by him on the 1st day of April of that year. As written in his tax schedule, they may be considered at least as indicating or tending to show that he held on said date mortgage notes amounting in all to $16,000, the value of which, as a whole, was $13,000. His explanation given on the trial in respect to his reason for writing $16,000 after the words "All notes secured by mortgage" was that this amount represented what he thought the notes were worth on the market. His explanation is certainly inconsistent with the fact that he fixed the value of the notes for taxation at $13,000. If he believed or considered that $16,000 was the market or usual selling price of the notes which he listed, then under §8458, *supra,* he should have valued

them for taxation at $16,000, instead of $13,000, as he did. On cross-examination, when testifying as to his assessment of 1897, he stated that some of his notes were "looked at" by the assessor, that "all could have been seen," and that none were omitted to be returned so far as he knew. The question was not as to whether he had intentionally omitted to list any of his notes or credits, but it was as to whether any of them had been actually omitted. The reason for the omission, if any existed, was not essential. Other facts and circumstances might be stated to show that the $16,000 in question was intended to represent all the mortgage notes held by appellee on April 1, 1897, and that the township assessor at the time of the assessment was thereby given to understand that this amount embraced all notes secured by mortgage. It is not essential, however, that such facts or circumstances be given or stated in this opinion, as they would subserve no useful purpose, especially in view of the fact that there must be a retrial of the cause. The question as to whether appellee listed all of his notes in 1897 does not depend upon evidence in which there is any substantial conflict.

After a full consideration, we are of the opinion that the finding of the trial court that appellee listed and returned all of his mortgage notes in 1897 is not fairly supported by the evidence, and to this extent, at least, he has failed to overthrow the assessment of the county auditor.

The judgment for this reason is therefore reversed, and the cause remanded, with instructions to the lower court to grant appellant a new trial.