## JONES *v.* LUDDINGTON ET AL.

[No. 22,204.   Filed April 16, 1913.   Rehearing denied
June 25, 1913.]

1.  DRAINS.—*Establishment.—Assessment of Damages.—Evidence.—
    Sufficiency.*—On the trial of a remonstrance against the report
    of drainage commissioners with reference to a proposed drain,
    where, notwithstanding the testimony of remonstrant and others
    that remonstrant would be greatly damaged by the increased
    volume of water brought to the mouth of the proposed drain,
    which, in their opinions, could not be carried away by another
    ditch into which it would empty, there was evidence that the
    latter drain, below the outlet of the proposed drain, has a carry-
    ing capacity of fifty per cent more than the proposed drain would
    have above the outlet, that remonstrant's land would not be
    damaged by overflows, and that remonstrant had admitted to
    the commissioners that the water from the proposed drain would
    not cause the existing drain to overflow, the court's finding
    against remonstrant on the question of damages was supported
    by the evidence.   p. 35.
2.  DRAINS.—*Establishment. — Benefits. — Evidence.* — The  court's
    finding, that the lands of a remonstrant against the report of

drainage commissioners with reference to a proposed drain will be substantially benefited by the construction of such drain, is amply supported by the evidence, where, notwithstanding opinion evidence of remonstrant and others to the effect that remonstrant's land would not be benefited, there was evidence showing the area being drained through his land, the general character of the soil affected by the system, the present condition and value of remonstrant's land' and its adaptability to the growing of crops, and the report of the viewers showed the course, depth, width and fall of the main ditch, and arms thereof, and there was evidence of other facts and circumstances warranting the inferences of benefits and the amounts thereof.  p. 36.

3.  APPEAL.—*Review.*—*Findings.* — *Conflicting Evidence.* — Section 698 Burns 1908, Acts 1903 p. 338, §8, providing that, in causes not triable by jury, the court on appeal shall, if required by the assignment of errors, consider and weigh the evidence, does not require the weighing on appeal of conflicting oral evidence. p. 37.

From Porter Circuit Court; *Willis C. McMahan,* Judge.

Remonstrance by Leander Jones against the report of drainage commissioners in proceedings for the construction of a drain, commenced on the petition of Joseph D. Luddington and others.   From a judgment against him, the remonstrant appeals.   *Affirmed.*

*H. A. Loring,* for appellant.

*D. E. Kelly* and *Walter Fabing,* for appellees.

MORRIS, J.—Appellees filed a petition for the construction of a drain.   Appellant remonstrated against the report of the drainage commissioners, on the grounds, among others, that certain tracts of his land, assessed as benefited, would be greatly damaged by overflow water, and that four tracts, assessed as benefited in the respective sums of $40, $60, $200 and $200, would derive no benefits from the proposed work.   The court found against appellant on the question of damages, and modified the assessment of benefits so as to leave the four tracts assessed respectively at $40, $60, $100 and $50.

The only questions presented here, are based on the alleged insufficiency of the evidence, in fact and law, to

support the decision of the trial court. The proposed system of drainage consists of an open main ditch, over six miles long, with twenty-two tiled arms. It will terminate, at a point on appellant's farm, in a large open drain, known as Wolf Creek Ditch, which flows for some distance through appellant's land, and has its outlet in Cobb Creek Ditch. The drainage area of the proposed system embraces about 1,600 acres. The main ditch has a base width of ten feet throughout, and a depth varying from about five to about ten feet. The petitioners prayed for a drain extending further down the stream, through Wolf Creek and Cobb Creek Ditches, but by the report of the commissioners, the terminus was fixed as above indicated.

1. Appellant claims there is no evidence to support the court's finding on the question of damages. In this, he is in error. While appellant, and others, testified that his land would be overflowed and greatly damaged by the increased volume of water brought to the mouth of the proposed drain, which, in their opinions, could not be carried by Wolf Creek Ditch, on the other hand, the county surveyor (one of the commissioners), who was a witness in behalf of both appellant and petitioners, testified that Wolf Creek Ditch, below the outlet of the proposed system, has a carrying capacity of fifty per cent more than the proposed ditch has above its outlet; that below the terminus of the new drain, Wolf Creek Ditch has a fall so heavy that the water riffles in flowing; that while there might be some overflow on appellant's lands, in spring freshets, the same condition now exists, and appellant's lands would not by the construction of the drain, be subjected to any additional overflow that would cause damage to his land; that at the present time the overflow of the entire drainage area passes over appellant's lands in controversy. Appellant testified that there are certain obstructions in Wolf Creek Ditch, on his land. Thomas J. Wilson, one of the commissioners, testified that when they

were viewing the land, preparatory to making their report, appellant told the commissioners that Wolf Creek Ditch, as it was, was large enough to take the water, and that he would remove certain obstructions, then in Wolf Creek Ditch, on his land. Samuel H. Adams, the remaining commissioner, in response to a question asked by appellant's counsel, testified that, with the proposed system of drainage emptying into Wolf Creek Ditch the latter would not overflow.

Appellant contends there was no evidence to support the court's finding in relation to benefits. Appellant, and other witnesses in his behalf, after stating certain facts, testified that in their opinions, the values of the tracts of land in controversy would not be greater, and, in some instances would be less, after the construction of the proposed drain, than at present. These witnesses stated their opinions of the values of the lands now, and what they would be after the construction of the proposed drain. Only one of the witnesses, in behalf of the petitioners, (the surveyor) gave opinion evidence in relation to amount of benefits, and that with reference to one tract only. He testified that one forty-acre tract would be benefited in the sum of $200. Another of the commissioners, testifying for petitioners, said appellant's lands would be benefited by the proposed drainage, but gave no opinion as to amount of benefits. If, in determining the questions of benefits, the court was limited to a consideration of the opinion evidence, it might be said that as to three of the tracts, no evidence was given warranting assessments of more than nominal benefits. But the court was not so limited. There was evidence of the following facts: the entire area of 1,600 acres now drains through appellant's lands; there are places, of definite areas, on appellant's lands, now unfit for cultivation, because too wet; the land is now worth about $100 per acre; is suitable, where properly drained, for producing corn, wheat and oats, of stated average yields per

acre; the water level of the drainage area will be greatly lowered. Many other facts, and circumstances relevant to the question of benefits, and measure thereof, appear in evidence, from which the court was warranted in drawing inferences of benefits, and the amounts thereof. The court was warranted in inferring that the lowering of the water level, in the drainage area, would greatly increase the capacity of the land embraced therein to absorb rainfall during crop seasons, and thus prevent crop injury by overflow or stagnant water. The viewers' report showed the course, depth, width and fall of the main ditch, and arms thereof; the general character of the soil through which the system extended, was in evidence, and these facts furnished a more reliable basis of estimating the carrying capacity of the ditch, than mere general observation of the country affected. There was evidence to support the court's decision in relation to benefits to the several parcels, and there was evidence which would have supported a finding for larger amounts.

Appellant has assigned as error that the decision of 3. the trial court is contrary to the weight of the evidence, and requests this court to weigh the evidence, under the provisions of §8 of the act of 1903 (Acts 1903 p. 338, §698 Burns 1908). This court has repeatedly held that the above statute does not require the weighing, on appeal, of conflicting oral evidence. *Seybold* v. *Rehwald* (1912), 177 Ind. 301, 95 N. E. 235; *Parkison* v. *Thompson* (1905), 164 Ind. 609, 73 N. E. 109, 3 Ann. Cas. 677; *Ray* v. *Baker* (1905), 165 Ind. 74, 74 N. E. 619; *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 75 N. E. 877, 2 L. R. A. (N. S.) 788, 6 Ann. Cas. 829.

There is no reversible error. Judgment affirmed.

NOTE.—Reported in 101 N. E. 483. See, also, under (1) 14 Cyc. 1042; (3) 3 Cyc. 360.