## HENSLER v. FOUNTAIN PARK COMPANY.

[No. 8,373.   Filed October 14, 1914.]

1. NEW TRIAL.—New Trial as of·Right.—In an action prosecuted primarily to ascertain and define the rights of defendant under a lease of a Chautauqua park, and to protect such rights by injunction, and involving only incidentally the rights of the parties to a road which the defendant sought to have the plaintiff enjoined from obstructing, there was no such interest in land involved as to entitle the losing party to a new trial as of right, and especially where the judgment with respect to the road accorded with the contention of the losing party. p. 109.

2. EVIDENCE.—Written Contract.—Lease.—Parol Evidence.—Where a lease to a Chautauqua corporation leased the land in controversy for a term of years to be used for Chautauqua purposes during July and August of each year, and "the free use of such buildings as the hotel, auditorium, and water tower and waterworks system, with the permission to lease to private parties ground rent for cottages", etc., the quoted language had to do with the use of the structures in connection with the land leased, rather

than their ownership, and in the absence of a statement in the lease showing that the lessor was the owner of the buildings, the presumption of ownership was not conclusive; hence parol testimony showing that lessee owned the buildings was not objectionable on the theory that it contradicted the terms of the lease on that subject. p. 110.

3. EVIDENCE.—*Written Contract.—Lease.—Parol Evidence.*—Under a lease of land to a Chautauqua corporation, where there was no express statement showing the ownership of the buildings used by the corporation, a grant of "the free use of such buildings as the hotel, auditorium, and the water tower and waterworks system", was sufficiently ambiguous to warrant the admission of parol testimony as to the construction placed thereon by the parties, and as to the relation the parties bore to each other and to the subject-matter of the language quoted. p. 110.

4. APPEAL.—*Findings.—Conclusiveness.*—The findings of the trial court, if sustained by some evidence, are conclusive on appeal. p. 112.

From Jasper Circuit Court; *Charles W. Hanley,* Judge.

Action by Christian L. Hensler against the Fountain Park Company. From the judgment rendered, the plaintiff appeals. *Affirmed.*

*Abraham Halleck* and *George A. Williams,* for appellant.

*Daniel Fraser, Will H. Isham* and *Frank Foltz,* for appellee.

CALDWELL, J.—The controversy in this action involves the question of the ownership of certain buildings and other structures used by appellee in conducting Chautauqua assemblies, and the respective rights of appellant as owner, and appellee as lessee in and to the use of the lands on which said assemblies are held. The principal point presented is as to the sufficiency of the evidence to sustain the decision of the trial court.

At the trial, apparently for the most part by common consent, the rules governing the admissibility of evidence were somewhat loosely applied. There is no assignment in the motion for a new trial based on the admitting or rejecting of offered evidence. An abstract of the evidence is in part as follows: For more than twenty years prior to 1908,

Robert Parker was the owner of the following lands situate in Jasper County, Indiana, near the town of Remington: The northwest quarter of the northeast quarter and the north thirty acres of the northeast quarter of the northeast quarter of section 30, township 27 north, range 7 west, and during the same period his wife, Hattie E. Parker, was the owner of the south ten acres of said northeast quarter of said northeast quarter. The west forty acres was a natural park, through the southern portion of which Carpenter's Creek flowed. The thirty-acre tract had formerly been a fairground, and had situated on it a race track and infield, amphitheatre and judges' stand. Each year, prior to the time of the trial, commencing in about 1895, a Chautauqua assembly had been conducted on said lands, the history of the enterprise dividing itself into four periods, to wit, prior to sometime in 1897; thence to June 15, 1904; thence to sometime in 1908; and subsequent to the last named period. The movement originated with Robert Parker, who with the assistance of certain associates, conducted such assemblies annually prior to 1897, using for such purpose a tabernacle constructed by him. In 1897, the promoters, including Robert Parker, took steps to organize as a corporation under the name of Fountain Park Company. The organization was not such, however, as to constitute it a *de jure* corporation. On or prior to June 15, 1904, the organization was legally perfected as a corporation, with a capital stock of $30,000. It was at all times the purpose of the promoters and incorporators to sell the stock in small quantities to a large number of individuals. To that end, the shares were widely sold and distributed, both before and after the time of the perfecting of the organization in 1904. Under the latter organization, stock theretofore issued was apparently recognized, yet it was the purpose of the incorporators to take up such stock and issue instead stock in the perfected organization, which purpose was for the most part carried out.

Robert Parker was a banker, a man of wealth and intelligence, widely and successfully experienced in business matters. He was universally respected in the community, and was a leader in all movements directed to the improvement of mankind. As a consequence, in the organization of 1897, he was made president of the board of directors and superintendent and general manager of the enterprise, which position he held until sometime in 1908, when, meeting with financial reverses, he voluntarily severed his connection with the company, and later moved to a distant state. Shortly thereafter, said lands, theretofore owned by him, were conveyed to appellant by a trustee in bankruptcy, subject to the rights of appellee, under a lease hereinafter described. At about the same time, the ten-acre tract theretofore owned by Hattie E. Parker, was regularly conveyed to appellant. While the board of directors held regular meetings and in a general way directed the affairs of the company, and especially after the organization in 1904, the actual details were attended to by Robert Parker. Thus, for the most part all money from the gate receipts, sale of stock and other sources was received and expended by him. He superintended the making of practically all improvements and repairs, purchased material used for such purposes, hired the labor, and drew the checks of said company in payment of bills thus created. He apparently deposited the money of the company in the bank with which he was connected. While he from time to time made financial reports to appellee, such reports were verbal rather than written, and were very general, being scarcely more than that a certain amount had been received, a certain amount paid out, with a consequent surplus or deficit. After the organization in 1897, the enterprise seems to have grown and flourished. It was apparently conducted primarily for the entertainment and enlightenment of the community, rather than for gain. Its annual assemblies, which as a rule were held in August, were attended by thousands. On its programs were lecturers,

divines and musical aggregations of wide reputation. As attractions for the young, and as a part of the assembly exercises, there were ball games, tennis, croquet, and athletic sports, the old fairgrounds on the thirty-acre tract being used for such purposes. After the organization in 1897, a number of improvements were made from time to time. Thus, a concrete dam was built across said stream, boating and bathing privileges being thereby afforded; a water plant and a light plant were installed; various additional buildings were erected, as a hotel, restaurants, barber shops, rest room, boat houses, feed stalls and a certain two-story cottage built as an annex to the hotel, known as "The Parker Cottage". Some of these improvements were made before and some after the organization in 1904. A large number of lots were leased to private persons, and a cottage built on each. There was evidence that after the 1897 organization, it was verbally agreed between Mr. Parker and the company that the latter might proceed to improve the premises by the erection of buildings and other structures, and that the company might hold the grounds for assembly purposes for a term of not less than twenty-five years, at a specified annual rental, the actual occupancy to be confined to July and August of each year, and that later the terms of the agreement should be reduced to writing, and that all improvements made by the company might be removed by it at any time within the created term. There was evidence that material bought for the improvements, including the Parker cottage, was charged to appellee, and that checks were drawn by Mr. Parker in the name of appellee in payment for such material, and for labor in making such improvements. There was evidence that while Mr. Parker was yet the owner of the lands, he made statements to the effect that the company was the owner of the buildings so erected and improvements so made. As to the Parker cottage, the proceedings of the board of directors showed that it was built by direction of the board as an annex to the hotel. Certain rooms in it were occupied

by the Parker family during assembly sessions, for which occupancy there was evidence that Mr. Parker agreed to pay the same rent as was paid to the company by persons occupying other rooms therein. There was other evidence heard to the effect that Mr. Parker stated, several years after he had parted with title to the lands and severed his connection with said company, that the cottage was the property of his wife, but that the trustee in bankruptcy had authority to transfer it to appellant.

One claim made at the trial was to the effect that Mr. Parker had paid for the improvements with his own money, and that the company had not repaid him, and that the improvements having been made on Mr. Parker's land must be deemed to be a part of the land, and that they passed to appellant under the conveyance. There was evidence that when Mr. Parker at any time had exhausted the funds of the company in paying for improvements, he executed the company's note to the bank with which he was connected to procure additional funds or to replete an overdrawn account. There was evidence that he stated shortly before he severed his connection with the company that except a few scattering accounts of small amounts, the company owed no debts other than the notes held by the bank. In making such statement, he did not claim that the company was indebted to him. The court heard evidence of the statements of certain individual officers of the company after appellant had purchased the lands, by which they apparently conceded that appellant owned the Parker cottage, and also explanations by such officers that when such statements were made they did not know that the funds of the company were used in building the cottage.

Shortly after the reorganization in 1904, to wit, on June 15, 1904, Mr. Parker drew up a lease, which was executed by himself and wife and by the secretary of the company, and thereafter duly recorded, by which he leased the seventy acres, except the farmhouse thereon and the appurtenances

connected therewith, to the company for a period of twenty-five years, at a stipulated annual rental, to be used for Chautauqua purposes during the months of July and August of each year. The lease contained the following language: "The use and occupancy of said leased premises by said Fountain Park Company does not grant them any rights to the timber * * * but grants to them the free use of such buildings as the hotel, auditorium, water tower and water works system, with the permission to lease to private parties ground rent for cottages", etc.

Prior to 1902, a public highway, extended in a southeasterly direction through said west forty acres. In said year an arrangement was made to the effect that Mr. Parker should petition the board of county commissioners for the vacation of the road, and the vacation being accomplished, a road should be opened up, extending from a public highway on the east side of the lands west along the north side. of said ten-acre tract to and into the grounds, such road to be used as a means of access to the grounds, and also to the farm buildings, which were situated on the south end of the west forty acres. Such arrangement was carried out. The public highway was vacated by the board of commissioners, without opposition, and the contemplated road was opened up and graded and graveled, the expense of improving it being paid in part by appellee and in part by Mr. Parker. At the trial, appellee contended that the opened road was a public highway, while appellant contended that it was merely a private way for the use of appellee and its patrons, and for the convenience of the occupants of the farm buildings. The evidence showed that the road was kept closed by a gate or other means, except during the sessions of said Chautauqua, at which times appellee and its patrons used it freely.

Appellant for a number of years had resided near the assembly grounds, and frequently attended the sessions. He knew prior to the purchase of the land that appellee had it

leased, and that the Chautauqua enterprise was being conducted, but he apparently made but little or no effort to ascertain appellee's rights in the premises. The lands were advertised and offered for sale in August, 1908, within the annual period of the actual occupancy by appellee for Chautauqua purposes, but the deed was executed to appellant later. Shortly after the lands were conveyed to appellant, controversy arose between him and the company, the controversy assuming definite form to the effect that appellant brought this action to recover from appellee rents for the use and occupancy of the Parker cottage. The action on the complaint seems to have been abandoned. the trial having been had on the issue joined on appellee's cross-complaint. Appellee, suing as a corporation, sets out in its cross-complaint, a copy of the lease, alleges matter in narration and description of its enterprise; alleges the prior ownership of the lands by Parker, and the subsequent acquisition of title by appellant, subject to the lease; that it built and owns the hotel and other structures on the forty-acre tract, and that under its lease, it has a right to the use of the race track, infield and structures on said thirty-acre tract; that the roadway so opened up is a public highway and necessary to the convenience of appellee; that appellant has destroyed the judges' stand and dismantled the amphitheatre; that he has damaged and threatened to destroy the dam, and to close the road; that appellant claims all the improvements. There are other allegations of claims made by appellant and of uses made by him of the lands and threatened uses thereof, alleged to be inconsistent with and destructive of appellee's rights in the premises. The prayer is that the lease be construed and the rights of the parties ascertained, and particularly that appellee be adjudged to be the owner of the improvements on the 40-acre tract, and that the court decree the right to remove them within the term of the lease; that appellant be enjoined from obstructing or interfering with the road, race track or infield;

and from making any use of the lands inconsistent with appellee's right to use and occupy them for Chautauqua purposes, as aforesaid, and from interfering with appellee's representatives when entering on the lands over the road at any proper time and for the purpose of preserving and repairing its property; and that a mandatory injunction issue requiring appellant to restore the judges' stand, amphitheatre and dam, or that he respond in damages.

The answer to the cross-complaint was a general denial. Trial by the court, resulting in a judgment and decree to the effect that appellee is the owner of the various buildings and structures situated on the forty-acre tract, except the tabernacle, and that appellee may remove them from the premises at any time before the expiration of the lease, and that it has a right under the lease to occupy and use the premises, including the tabernacle and race track and infield on the thirty-acre tract, until the expiration of the lease, during which time appellant is enjoined by a specific order from doing anything on or with the lands inconsistent with or prejudicial to appellee's occupancy for Chautauqua purposes. Appellant is ordered to restore the amphitheatre and judges' stand, and failing so to do, that appellee may do the work, in which event judgment in the alternative for the sum of $200 is given. The court adjudges the highway to be a private way, and decrees that appellant may close it by gates except in the months of July and August of each year, during which time appellee and its patrons may have free use of it, as an open, unobstructed way, and that at all other proper times, appellee may enter the grounds over the road for the purpose of preserving its property and making repairs, and appellant is enjoined from interfering with such use of the road. Appellant is adjudged to be the owner of the tabernacle, subject to appellee's right to use it as aforesaid.

Appellant moved for a new trial as of right, and also for cause, each of which motions was overruled. The former

motion is based on the fact that the action involves
1. the rights of the parties in the road. As a conse-
quence, it is urged that the litigated matter included
such an interest in land as entitles the losing party to a new
trial as of right under the statute. Appellant cites *Camp-
bell* v. *Hunt* (1885), 104 Ind. 210, 2 N. E. 363, 3 N. E. 879;
and *Thomas* v. *McCoy* (1911), 48 Ind. App. 403, 96 N. E.
14. There were a number of questions involved in the
action. Primarily it was prosecuted that appellee's rights
under the lease might be ascertained and defined, and that
appellant should be enjoined from interfering with such
rights. The road was involved only as an incident to ap-
pellee's general right to use and occupy the premises for
purposes aforesaid. The action in its relation to such road
as such incident was prosecuted for the purpose of enjoining
appellant from obstructing or interfering with it as an
established improved and used highway. Under such cir-
cumstances, appellant was not entitled to a new trial as of
right. See the following, which are sufficient also to dis-
tinguish the cases cited by appellant: *Nutter* v. *Hendricks*
(1898), 150 Ind. 605, 50 N. E. 748; *Richwine* v. *Presbyterian
Church* (1893), 135 Ind. 80, 34 N. E. 737; *Wilson* v. *Brook-
shire* (1891), 126 Ind. 497, 25 N. E. 131, 9 L. R. A. 792;
*Butler University* v. *Conard* (1884), 94 Ind. 353; *Jones* v.
*Peters* (1902), 28 Ind. App. 383, 62 N. E. 1019; *Cambridge
Lodge, etc.* v. *Routh* (1904), 163 Ind. 1, 9, 71 N. E. 148;
*Atkinson* v. *Williams* (1898), 151 Ind. 431, 51 N. E. 731;
*Hall* v. *Hedrick* (1890), 125 Ind. 326, 330, 25 N. E. 350;
*Larrimore* v. *Williams* (1868), 30 Ind. 18, 22; 2 L. R. A.
Extra Ann. 374. Moreover, while appellee at the trial and
by its cross-complaint took the position that the road was
a public highway in which it had a special interest beyond
that of the general public, appellant claimed that it was a
mere private way. On such question appellant prevailed,
the court adjudging the road to be such a private way in
which appellee had merely a right of user, as appellant con-

ceded at the trial.  It would seem that for this additional reason, appellant's motion for a new trial as of right was properly overruled.

Under the motion for a new trial for cause, appellant assigns and discusses the alleged insufficiency of the evidence, and that the amount of recovery is erroneous, being too large.  As to the sufficiency of the evidence, appellant as a witness at the trial testified that he had destroyed the judges' stand and that he had dismantled said amphitheatre, situated on said thirty-acre tract.  This tract was described in the lease as a part of the lands thereby leased.  While possibly appellee did not use such structures and the race track and infield every year in connection with Chautauqua assemblies, yet as a rule they were so used, and they were not included among the reservations made by the lease. There was evidence to sustain the court's decision in its relation to such phase of the case.  There was evidence also to sustain the decision respecting the road and the right to use the auditorium.  As to the other buildings and structures situated on the forty-acre tract, it is apparent from the abstract of evidence hereinbefore set out that it is amply sufficient to sustain the court's decision if properly admitted, and if it has proving force.

It is argued, however, that all the testimony heard respecting the ownership of the buildings and other structures contradicts the terms of the lease.  This argument is based on the fact that appellee accepted a lease, by the terms of which there was granted to appellee, among other things, "the free use of such buildings as the hotel, auditorium, and water tower and water works system."  It appears from said quoted language that said testimony contradicts no express statement contained in the lease on the subject of the ownership of the buildings and structures.  The subject-matter of the quotation is the use of the structures in connection with the lands leased, rather than their ownership.  The subject of

such quoted language might well have been completed in the lease either to the effect that the lessor had theretofore erected said structures and owned them, or that appellee had built and owned them.    Had there been no such buildings or structures on the leased premises, apt language, when considered in connection with the purposes of the lease, would have been to the effect that permission was, by the lease, given appellant to erect all needed structures.    Certain buildings and structures being already on the premises, the lease is open to the construction that both parties to the lease had in mind only the right to use such structures in carrying out the purposes of the lease.    The limit of force that can properly be assigned to the quoted language is that therefrom a presumption arises that Parker was the owner of the buildings and structures mentioned.    In the absence of a statement to that effect in the lease, such presumption is not conclusive.    There is at least so much ambiguity in the meaning of the quoted language and in the force and effect that must be assigned to it, that the court was warranted in hearing evidence respecting the construction placed thereon by the parties, and also evidence of the relation of the parties to each other and to the subject-matter of the quoted portion of the lease, as aids to the interpretation thereof.    ''In cases where the language used by the parties to the contract is indefinite and ambiguous, and, hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence.''    *Chicago* v. *Sheldon* (1869), 9 Wall. 50.    See, also, *Board, etc.* v. *Gibson* (1902), 158 Ind. 471, 485, 63 N. E. 982.    Under such circumstances, and where the language used admits of more than one construction, parol evidence, including evidence of acts, negotiations and statements of the parties is admitted to show their true relation to the subject-matter of the contract, and as an aid to the proper interpretation of the language used.    *Bell's Admx.* v. *Golding* (1866), 27 Ind. 173; 17 Cyc. 668, *et seq.;* Jones, Evi-

dence (2d ed.) §453, *et seq.; Prather* v. *Ross* (1861), 17 Ind. 495, 499.

Certain statements both verbal and written made by Parker after he had parted with all interests in the lands, respecting the ownership of the buildings and other

4. structures were introduced in evidence both by appellee and appellant without objection. We by no means hold that such statements were properly heard. Aside from such statements, however, it is apparent from our review of the evidence that there was at least some evidence to sustain the court's decision in each particular. Under such circumstances, we cannot review the court's decision as to the sufficiency of the evidence.

As indicated, the court awarded an alternative judgment against appellant in the sum of $200 based on the fact of the destruction of the judges' stand and the dismantling of the amphitheatre. There is evidence to sustain the amount of the judgment. Moreover, if appellant believes the judgment to be excessive, he may escape its consequences by restoring the buildings at his own expense, as ordered by the court.

There is no error in the record for which the judgment should be reversed. Judgment affirmed.

NOTE.—Reported in 106 N. E. 384. As to parol evidence to explain mercantile and other written contracts, see 6 Am. Rep. 678; 28 Am. Rep. 210. See, also, under (1) 29 Cyc. 1035; (2, 3) 24 Cyc. 916; (4) 3 Cyc. 360.