## SMITH *v.* TOTH ET AL.

### [No. 9,120.   Filed February 16, 1916.]

1. WORDS AND PHRASES.—*"Gross".—"Net".*—The word "gross" when used to characterize a sum of money conveys the idea of a named or indicated amount before diminution, but from which there are to be taken other sums or amounts, leaving a balance, and the word "net" suggests a balance after all deductions have been made from a larger sum.   p. 45.

2. CONTRACTS.—*Construction.—Admissibility of Parol Evidence.*—A written contract, clear and unambiguous, should be interpreted solely from a consideration of its terms, and enforced as thus interpreted; hence if the court hears parol evidence for the purpose of clarifying such a contract and gives effect to it as thus interpreted, the decision is contrary to law.   p. 48.

3. CONTRACTS.—*Construction.—Admissibility of Parol Evidence.*— Where a contract is ambiguous and uncertain, and its language admits of more than one construction, parol evidence of prior and contemporaneous negotiations and statements may be admitted and considered to aid in its construction, and the contract should be enforced as thus interpreted.   p. 49.

4. SPECIFIC PERFORMANCE.—*Contracts.—Construction.—Review.*—In an action for specific performance of a contract granting an option for the purchase of real estate "at and for the sum of $3,000 cash net" to grantor, and binding grantor to furnish abstract showing good title except as to special assessments, and to convey the real estate "free and clear of all liens whatever", the court properly heard and considered parol evidence to aid in the interpretation thereof, since the contract was ambiguous, and there being evidence to sustain the court's decision against plaintiff, the decision could neither be disturbed for insufficiency of evidence nor upon the theory that it was contrary to law.   p. 49.

5. SPECIFIC PERFORMANCE.—*Contracts.—Denial of Remedy.*—Where an option contract for the purchase of real estate is ambiguous as to the amount to be paid in case the option is exercised, the purchaser understanding that he is to pay a certain sum and the grantor understanding that he is to receive a larger sum, there is no meeting of the minds of the parties as to a material matter, and specific performance of such contract will be denied.   p. 49.

6. APPEAL.—*Review.—Waiver of Error.*—Alleged error in the exclusion of testimony is waived by failure of appellant's brief to disclose the place in the transcript where the action complained of may be found, and also by appellant's failure to direct any of the points and authorities to such alleged error.   p. 50.

From Lake Superior Court; *Johannes Kopelke,* Judge.

Action by Clarence Smith against John Toth and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*A. Ottenheimer* and *L. V. Cravens,* for appellant.

*George B. Sheerer* and *Kennedy & Lotz,* for appellees.

CALDWELL, J.—Appellant brought this action to compel the specific performance of the following contract:

"I, John Toth and Susanna V. Toth, of East Chicago, Indiana, for and in consideration of the sum of One Dollar to me in hand paid by Clarence C. Smith, of East Chicago, Indiana, do hereby give to said ‚Clarence C. Smith, his heirs and assigns, the privilege of purchasing on or before the 10th day of February, 1912, the following described real estate, situated in the county of Lake and the State of Indiana, to wit: Lots thirty-one (31) and thirty-two (32) * * * at and for the price of Three Thousand (3,000.00) cash net to said Toth. Said money to be paid on or before the 15th day of February, 1912, to John V. Toth and Susanna V. Toth. I also agree to furnish an abstract of title showing good title to said real estate, except special assessments payable after Nov. 1, 1911. In case the privilege of purchase hereby given is exercised, I agree to convey and assure the said real estate to said Clarence C. Smith, his heirs or assigns by a good and sufficient warranty deed, reciting a consideration of $1.00 free and clear of all liens whatever. John V. Toth, Mrs. Susanna V. Toth. Accepted by me this 10th day of January, 1912. Clarence C. Smith. Witness: G. H. Jacobson."

It is alleged in the complaint that appellant on January 29, 1912, exercised his option to purchase by notifying appellees (by which term, as used in this opinion, is meant Toth and Toth, unless other-

wise indicated), in writing to that effect, and that said appellees thereupon furnished him an abstract of title to the real estate, which disclosed a mortgage thereon reduced to a judgment in a foreclosure proceeding in the sum of $1,887.23, and that appellant thereupon tendered to Toth and Toth in lawful money the difference between $3,000 and the amount of the judgment and demanded that they accept it and convey the real estate to him by warranty deed, all of which they refused to do. The other appellees were made defendants by reason of being subsequent purchasers from Toth and Toth. The cause having been placed at issue by the filing of appropriate answers and replies, a trial by the court resulted in a decision and judgment for costs in favor of appellees.

The questions presented arise under the motion for a new trial, and are the insufficiency of the evidence, that the decision is contrary to law, and alleged error in the exclusion of certain offered testimony. The principal matter in controversy grows out of conflict in the constructions placed on the contract. Appellant contends that by the terms of the contract he bound himself on his election to avail himself of the option thereby extended to him to pay $3,000 for the property free of all liens thereon, except special assessments, payable after November 1, 1911. Appellees, Toth and Toth, however, contend that by the terms of the contract, appellant, in case he elected to purchase the property, agreed to pay them $3,000 for the property subject to all liens thereon, the existence of which they claim were well known to the parties.

It is apparent from an inspection of the contract that each party may point to a stipulation thereof as a foundation for his contention. Thus, it is provided that the price shall be $3,000 cash net to Toth.

From other provisions considered alone, it is plausible to urge that the appellant agreed to pay $3,000 cash after appellees had discharged all liens, except the assessments named, or that out of the $3,000 they were to discharge such liens. However, in connection with such construction 1. the word "net" must be considered. If the $3,000 was intended to be a sum a part of which should be used to discharge liens, and only the residue to remain ultimately in the hands of appellees, the word "gross" rather than "net", or the use of no qualifying word at all would have been more apt. The word "gross" when used to characterize a sum of money, conveys the idea of a named or indicated amount before dimimution, but from which there are to be taken other sums or amounts, leaving a balance. The word "net" suggests a balance after all deductions have been made from a larger sum. *Scott* v. *Hartley* (1891), 126 Ind. 239, 25 N. E. 826; 29 Cyc 670. The word "net" is in the contract, and some value should be assigned to it. Its use evidently contemplates the payment of something, as the expense of the sale or of making the abstract, the payment of liens or some other expenditure, and that whatever it means, appellees should be relieved from making such payments. But appellees agreed to convey the property by warranty deed "free and clear of all liens whatever". This language, considered alone, placed upon them the obligation to discharge all liens. If they assumed such an obligation and there were liens against the property which they were required to pay in the transaction of selling, and in such transaction they should receive from appellant but $3,000, how could it be said that they received such sum cash net? No one contends, however, that appellees were to discharge all liens against

the property.   It is conceded as stated in the contract in substance, that they were not to pay the assessments named.   How then can it be claimed that they obligated themselves to convey the property free of all liens?   The contract, when only certain parts of it are considered, might be susceptible of a construction that appellees agreed to convey the property free of all liens, except the assessments, but still we must deal with the word "net".   Under such circumstances, the trial court for the purpose of elucidating the contract heard parol testimony concerning transactions leading up to and attending the execution thereof, and also subsequent thereto.   The court's action in so doing is not challenged on this appeal.   Such parol testimony is conflicting to a marked degree, but from it there may be gleaned the following as tending to sustain the decision:   Appellant was engaged in buying and selling real estate on his own account and for others.   Appellees Toth and Toth are Hungarians, unable to read or write English, but able in a degree to carry on a conversation in that language. Shortly before January 10, 1912, Mrs. Toth called on appellant at his office for the purpose of selling or arranging to sell the real estate involved.   She informed him that there was a mortgage on the property amounting to about $1,800.   She said to him they wanted about $5,000 for the property, and priced it to him for $3,000, he to discharge the mortgage.   Appellant attempted to communicate with the mortgagee by telephone, to ascertain the exact amount of the mortgage, but failed.   At a subsequent visit, appellant exhibited to Mrs. Toth a card containing a statement of the mortgage indebtedness, showing a balance of something more than $1,800.   Thereafter, and before the contract was executed, a news item appeared in the papers to the

effect that the Baldwin locomotive works would be located at East Chicago, whereby the real estate market was materially stimulated. Thereafter, on the evening of January 10, Jacobson, appellant's agent, called on appellees, Toth and Toth, and presented the contract above set out, prepared ready for execution. Appellees' son, a youth of nineteen, educated in English, was present, and he was called on to read the contract, and interpret it into Hungarian. This he did by reading the contract and talking with Jacobson in English respecting its provisions, and by communicating the latter's statements to his parents in Hungarian. The son testified that the mortgage was discussed with Jacobson, and that he said that appellees would be paid $3,000 after appellant had paid the mortgage; that such was the meaning of the word "net" as used in the contract; that the "clear of all liens" provision meant that appellees' debts would be paid. The son communicated this information to his parents, and they then signed the contract. The son and his parents testified that Jacobson said as he left that they need not be surprised if he came around the next day with $3,000. Later Mrs. Toth delivered at appellant's office an abstract complete to a prior date. Later appellees at appellant's request called at appellant's office and were informed by him that there was trouble, and that he could not handle the property; that the completed abstract showed a $1,500 judgment against Mr. Toth, rendered in another matter, and also that the property was advertised for sale on the mortgage foreclosure. Toth then said to appellant that he did not know of the existence of the judgment (which seems to have been rendered against him possibly on default in a personal injury matter), and that appellant need not bother further about the prop-

erty.   As the Toths owned the real estate as tenants
by the entireties, the judgment last named, being
against Mr. Toth alone, was not a lien upon it.
The abstract apparently was not present at this in-
terview, and Mrs. Toth, therefore, later called for it.
In the presence of appellant, his attorney removed
from the abstract the additions bringing it down to
date, and delivered it to her.   Later under date of
January 26, appellant mailed to appellees a regis-
tered letter notifying them that he would exercise
his right to purchase the lots under the contract.
Appellees, Toth and Toth, testified that the dollar
mentioned in the contract was not paid, and
that appellant at no time tendered or offered to pay
to them any money on the contract or ever asked
them to execute to him a deed.   As we have in-
dicated, on all material points, except respecting
what appellees' son communicated to them in Hun-
garian at the time of the execution of the contract,
the evidence was sharply conflicting.   Appellant in-
sisted at the trial that appellees refused to consum-
mate the sale only because the mortgage indebted-
ness was larger than they supposed.   It is thus ap-
parent that the court heard parol evidence respect-
ing the contract which the parties claimed

2.   they intended to make, and it does not appear
that such parol evidence was not considered
in construing the written contract which the parties
subsequently executed.   If the written contract is
plain and unambiguous, the court should have, in-
terpreted it solely from a consideration of its terms,
and should have enforced it as so interpreted.   If
the court failed to do so, but gave effect to the con-
tract as clarified by such parol evidence, and if the
conclusion so reached was different from that that
would have been arrived at from a consideration of
the provisions of the written contract alone, and if

it is plain, complete and unambiguous as aforesaid, a decision so reached is contrary to law. This follows from an application of the well-settled principle that where a contract is reduced to writing and signed by the parties, it being plain, complete and unambiguous, all prior parol negotiations are merged therein, and parol evidence cannot be heard to vary or contradict its terms. *O'Brien* v. *Higley* (1904), 162 Ind. 316, 70 N. E. 42. But if the writing is ambiguous and uncertain, and its language admits of more than one construction, parol evidence of prior and contemporaneous negotiations and statements may be admitted and considered to aid in its construction, and to arrive at the intention of the parties as ambiguously expressed therein, and the contract should be enforced as thus interpreted. *Warren* v. *Marshall* (1906), 166 Ind. 88, 75 N. E. 582; *Hensler* v. *Fountain Park Co.* (1914), 57 Ind. App. 100, 106 N. E. 384.

It is evident that the contract here is ambiguous. The court therefore, properly heard and considered parol evidence. It follows, from a consideration of the evidence as above outlined that under the rule that governs on appeal in this sort of case, the court's decision, refusing a specific performance of the contract, as sought, is fairly sustained by the evidence, and, that it is not contrary to law. *Parkison* v. *Thompson* (1905), 164 Ind. 609, 73 N. E. 109, 3 Ann. Cas. 677; *Jones* v. *Luddington* (1913), 180 Ind. 33, 101 N. E. 483.

There is another view of this case: It is apparent from an inspection of the contract that it is uncertain respecting the price appellant was required to pay for the real estate, in the event that he elected to purchase it. There was abundant evidence, not however without contradiction, that appellees executed the contract in the full

belief that by its terms they were to be paid $3,000 cash net over and above the amount of the mortgage indebtedness. If it should be held that the contract, when submitted to the strict rules of constructions, by its terms required appellant to pay but the residue of the $3,000 after the discharge of the mortgage, and that he in fact so understood it to specify, it would follow that the minds of the parties did not in fact meet respecting the terms of the option sale. It thus appears that we have here a contract ambiguous in a material matter, and respecting the subject of which ambiguity the parties did not in fact agree. It is apparent also that if appellees were mistaken respecting the proper interpretation of the contract, and that they signed it under a misapprehension as to its meaning, there was evidence warranting the court in finding that appellant both in person and by his agent, in things done and said, contributed to the existence of such misapprehension and, thereby induced the execution of the contract. Under such circumstances courts of equity refuse to decree specific performance. *Rudisill* v. *Whitener* (1907), 15 L. R. A. (N. S.) 81, and extensive note; *Louisville, etc., R. Co.* v. *Bodenschatz Stone Co.* (1895), 141 Ind. 251, 39 N. E. 703; *Burke* v. *Mead* (1902), 159 Ind. 252, 64 N. E. 880; *McCauley* v. *Schatzley* (1909), 44 Ind. App. 262, 88 N. E. 972; *Burkhalter* v. *Jones* (1884), 32 Kan. 5, 3 Pac. 559; *Wilkin* v. *Voss* (1903), 120 Iowa 500, 94 N. W. 1123; *Hopwood* v. *McCausland* (1903), 120 Iowa 218, 94 N. W. 465; *Cawley* v. *Jean* (1905), 189 Mass. 220, 75 N. E. 614; 36 Cyc 605.

Respecting the excluded testimony, appellant has failed in his brief to refer us to the place in the transcript where the action complained of 6. may be found. In addition, in appellant's brief, no point is directed to these assign-

ments. The involved questions are, therefore, not presented, and, if presented, they are waived. Moreover, the questions propounded to witnesses, as set out in the motion for a new trial, show by their form that the court properly excluded the testimony sought. The judgment is affirmed.

NOTE.—Reported in 111 N. E. 442. As to the basis of the doctrine of specific performance, see 128 Am. St. 383. For a discussion of the right to specific performance of optional contracts, see 1 Ann. Cas. 990; 12 Ann. Cas. 90; Ann. Cas. 1913 A 362. See, also, under (1) 20 Cyc 1367; (2) 9 Cyc 577, 587, 588; (3) 9 Cyc 587; 17 Cyc 662; (5) 36 Cyc 595; (6) 3 C. J. 1415, 1430; 2 Cyc 1015, 1017.