PUBLIC WATER SUPPLY DISTRICT OF PEMISCOT COUNTY NO. I, a public corporation, Plaintiff-Appellant,

v.

Zula FOWLKES, Defendant-Respondent.

No. 8500.

Springfield Court of Appeals.

Missouri.

Oct. 11, 1966.

James E. Reeves, Ward & Reeves, Caruthersville, for plaintiff-appellant.

Wendell W. Crow, Elbert L. Ford, Ford, Ford & Crow, Kennett, for defendant-respondent.

HOGAN, Judge.

This appeal is taken from an order refusing specific performance of an alleged agreement by the defendant to convey certain interests in land to the plaintiff, upon plaintiff's payment of the sum of $2,000.00 and the performance of certain other acts for the defendant's benefit. The plaintiff is a county Public Water Supply District organized under and governed by the provisions of Sections 247.010 to 247.220.[1] The defendant is an individual landowner upon whose property the plaintiff has undertaken to locate a well, a pipeline and certain auxiliary installations necessary to the sale and distribution of water. The case, is, in reality, an adjunct to a condemnation action, the course of which must be incidentally noted. Neither the corporate existence of the District nor its authority to exercise the power of eminent domain [2] is in issue in this court.

At some time prior to April 27, 1964, the plaintiff Water District decided to locate a well and a pipeline on the defendant's land. Initially, and apparently to avoid the necessity of condemnation, the District attempted to purchase the land and easement it needed by direct negotiation with Mrs. Fowlkes, but she refused to sell. The record evidence is that she was offered the sum of $2,000.00 at "a meeting up there at the bank one night." Only a few, sparse details of this negotiation appear in the record; it does appear that defendant was told the District could condemn the necessary property rights, that they would pay her $2,000.00 for them, and that she refused. In any event, on April 27, 1964, the District declared it necessary to acquire the defendant's property rights for its public purposes and authorized condemnation.

Shortly thereafter, the District filed a petition in condemnation in the circuit court. Among other things, the District pleaded its authority to exercise the power of eminent domain under the provisions of Section 247.050(7); that it was necessary for the plaintiff to acquire a one-acre tract (particularly described) belonging to the defendant "for the purpose of constructing, erecting and maintaining a water well, treatment house and other buildings"; and that an easement across an adjoining tract (also particularly described) "[was] needed and necessary for the purpose of * * * laying * * * a water pipe line." The petition specifically recited that the plaintiff "cannot agree with the defendant owners * * * upon the proper compensation, if any, to be paid therefor * * *." Though the defendant testified at one point that she was the sole record owner of the property involved, the plaintiff joined Mrs. Fowlkes' husband, and later her tenant, one Billy Joe Sides, as defendants in the action. The defendant promptly obtained counsel, who filed a timely answer raising a number

---

1. All references to statutes and rules are to the 1959 Revision V.A.M.S. and V.A. M.R., unless otherwise noted.

2. At least within the limits of Section 247.050(7) and Section 247.210.

of defenses. The cause was set for trial on May 20, 1964.

Shortly after the defendant's answer was filed, her attorney and counsel for the District had a telephone conversation "concerning primarily the possibility of working out a compromise settlement." On May 5, 1964, Mrs. Fowlkes' attorney wrote her a letter, "detailing and explaining" the proposed compromise; the substance of the letter was that the District was "to relocate the well on the east side of the drainage ditch that came out by her home, a payment of $2,000.00 to be made to her, and the district was to supply her without charge a water line to her home." According to this attorney's testimony, on "the Saturday night before May 21" (May 16), Mrs. Fowlkes called late in the evening, stating that she was dissatisfied with the District's taking any of her property, but authorizing her attorney "to go ahead with [the compromise]." This attorney then advised counsel for the District of his discussions with Mrs. Fowlkes.

On May 20, the District's Board of Directors held a meeting, the minutes of which recite that "* * * Mr. and Mrs. Fowlkes [have] submitted the following proposition of settlement to the Board; that Mr. and Mrs. Fowlkes would withdraw their objections to the condemnation suit and *convey* [our emphasis] the one acre tract of land and easement described in the condemnation suit * * *" upon the conditions we have described. The minutes further recite that the following resolution was adopted:

"RESOLVED, that the District compromise and settle its condemnation suit against Zula Fowlkes and B. M. Fowlkes, upon the following terms and conditions; the District shall acquire the property rights described in the Resolution authorizing the condemnation suit duly adopted by the Board on April 27, 1964, the District shall pay to Mr. and Mrs. Fowlkes the sum of Two Thousand Dollars ($2,000.00), the location of the acre tract of land shall be on the east side of the ditch and the District shall lay a water line to the home of Mr. and Mrs. Fowlkes, said line to be of the same size and type generally in use by other water users."

On May 22, 1964, counsel for the plaintiff addressed a letter to Mrs. Fowlkes' attorney, a copy of which was received in evidence. The letter states that on behalf of the District, there are enclosed 1) a check in the amount of $2,000.00; 2) a warranty deed "from your clients to the Water District for a square acre of land located on the East side of the drainage ditch"; and 3) a right-of-way easement for a water pipe.

Mrs. Fowlkes did not execute the instruments enclosed. Instead, in a somewhat intemperate letter, she advised her attorney that "I *cannot* (sic) sign those papers and you are not authorized to make any arrangements or deals for me. You've helped put me in bed sick." Not unnaturally, counsel asked leave to withdraw, which was granted. On June 23, 1964, having employed new attorneys, the defendant filed amended responsive pleadings. On June 25, having added defendant's tenant, Billy Joe Sides, as a defendant, the District obtained a decree in condemnation, which recited specifically that the plaintiff and the defendants had endeavored, but were unable, to agree upon the proper compensation to be paid. Commissioners were appointed and were ordered to assess defendant's damages. On July 8, 1964, the commissioners filed their report, assessing defendant's damages at the sum of $2,800.00. The amount of the award was deposited with the circuit clerk on July 8, and both the District and the defendant filed exceptions, requesting an assessment of their damages by a jury. After considering and rejecting a proposal by the defendant to accept the sum of $3,250.00 as damages for the taking, the District, on December 10, 1964, filed this action for specific performance. The petition in this case set out that after the institution of the condemnation proceeding the defendant had, through her

attorney, agreed to compromise the issues for the sum of $2,000.00, and prayed that the court order and direct the defendant, upon the payment of $2,000.00, to transfer to plaintiff the interest sought to be acquired by the said condemnation suit, and that defendant be required to dismiss her exceptions to the said condemnation suit with prejudice. On December 28, 1964, the defendant put the matter at issue by filing an answer in which she denied generally the allegations in the petition, and pleaded that the purported agreement was in violation of the Statute of Frauds. It should be noted that when the instant action was tried, the original file in the condemnation case was introduced in evidence by the plaintiff, and the court was asked to take judicial notice of the proceedings and the decree in condemnation. It should be further noted that counsel for the District characterized this lawsuit as " * * * an alternate on the exceptions." Counsel continued: "If we threw these cases out, we would start over and have a hearing on the amount of damages to be awarded her [defendant], not on the question of whether she is going to convey title to said real estate." At another point, counsel for the District stated that "we certainly don't insist on any deeds. We are content to get whatever rights we may have under that condemnation. That is what we are acquiring here."

We need not recite at length the evidence given upon the trial. The court heard, among other witnesses, Mrs. Fowlkes' first attorney, and Mrs. Fowlkes. Mrs. Fowlkes' attorney testified that she had authorized execution of the agreement in question and had then repudiated it. The substance of Mrs. Fowlkes' testimony was that she had authorized settlement on such terms as would realize her a net payment, after expenses, of $2,000.00. Instead, she testified, her attorney had agreed to a gross settlement of $2,000.00, from which all her expenses had to be deducted. It was stipulated that the well and auxiliary buildings had in fact been located on the "east side of the ditch," and the plaintiff tendered its willingness to install the water line called for in its resolution. As indicated, the trial court denied specific enforcement. No findings of fact nor conclusions of law were requested, and none were volunteered.

■ We have had first to examine our jurisdiction of the appeal. As pleaded, the plaintiff's action was for specific performance of a contract which, at least in its inception, looked to the execution of a conveyance of land. Ordinarily an action for specific performance of a contract to convey land involves the title to real estate in the appellate jurisdictional sense, and jurisdiction of an appeal in such an action is in the Supreme Court. Article V, Section 3, Constitution of 1945; Drake v. Hicks, Mo., 249 S.W.2d 358, 360[1]; McCrory v. Brinckmann, Mo.App., 379 S.W.2d 882, 883–884[1–3]. The form of the action is not decisive, however; the determinative factor is whether the judgment sought or rendered directly determines title in some measure or degree adversely to one litigant and in favor of another. Albi v. Reed, Mo., 281 S.W.2d 882, 884 [1]; Domyan v. Dornin, Mo.App., 348 S. W.2d 360, 361[1]. So in cases wherein the action has nominally been for specific performance, but the relief sought or rendered has not in fact directly affected or operated upon the title to real estate, it has been held that the Courts of Appeals have jurisdiction. Stephens v. Anth, Mo., 142 S.W.2d 1008[2]; Atkinson v. Smothers, Mo.App., 291 S.W.2d 645, 647–648[2–4]. In this instance, the plaintiff's theory of submission was that this action for specific performance was only an "alternate on the exceptions. If we threw these cases out, we would start over and have a hearing on the amount of damages to be awarded her, not on the question of whether she [defendant] is going to convey title to said real estate." Plaintiff's counsel also stated: "We certainly don't insist on any deeds. We are content to get whatever rights we may have under that condemnation. That is

what we are acquiring here." Manifestly, the plaintiff sought no decree vesting title to the property in question in the District; rather, the plaintiff's object in this action was to secure an adjudication that the pleaded agreement bound Mrs. Fowlkes to accept the sum of $2,000.00 as damages for the appropriation of her property. The order and judgment of the trial court in no way affected the title to the property rights' in question, and both parties, so far as this record shows, accept the validity of the condemnation. We conclude that we have jurisdiction of the appeal.

■ The parties have briefed a number of points, and have vigorously and ably argued the case on its intrinsic merits. After prolonged consideration of the case, we have the view that the parties have considerably over-simplified it, and in our view there are grave impediments to the specific enforcement of the agreement in question other than those argued by the respondent. Space will be conserved, however, and we shall consider only those matters essential to a determination of the appeal in this court. Logsdon v. Duncan, Mo., 293 S.W.2d 944, 946[1]; Macy v. Day, Mo.App., 346 S.W.2d 555, 559[5].

■ In the first place, it must be remembered that specific performance is not a matter of right, even when the plaintiff's evidence establishes a contract valid at law and sufficient for the recovery of damages. Eisenbeis v. Shillington, 349 Mo. 108, 114, 159 S.W.2d 641, 644[6]; Gottfried v. Bray, 208 Mo. 652, 660–661, 106 S.W. 639, 642[2]. Ordering specific enforcement of a contract is a matter within the sound judicial discretion of the court. Miller v. Coffeen, 365 Mo. 204, 209, 280 S.W.2d 100, 102 [3, 4]; Anno., 65 A.L.R. 7, 22 (1930). Upon the record before us, it is not entirely clear what the District

proposed to do in effecting its "compromise." At one point in the record, counsel for the *defendant* stated that he understood the District was to have dismissed its condemnation action if Mrs. Fowlkes had executed the conveyances transmitted to her in the District's letter of May 22, 1964. Again, the language of the District's resolution of May 20—"the location of the acre tract of land shall be on the east side of the ditch"—and the words of its letter of May 22 suggest that the plaintiff, as part of its proposed compromise, agreed to take an acre different from the one it originally proposed to condemn. Other parts of the record suggest it simply proposed to relocate the structures on the "east side of the ditch." If in fact the District undertook, or meant to agree, to condemn only a specified tract, or to exercise its right of condemnation conditionally, we would have doubt that its agreement had a lawful object, for the power of eminent domain cannot be contracted away.[3] But assuming, with some reserve, that the agreement involved is fairly comparable to those discussed in Croker v. Consolidated Service Car Co., Mo., 365 S.W.2d 524, and Landau v. St. Louis Pub. Serv. Co., 364 Mo. 1134, 273 S.W.2d 255, 48 A.L.R.2d 1200, as the plaintiff contends, still the plaintiff was required to show the good faith and equities of its own position, Frederich v. Union Electric Light and Power Co., 336 Mo. 1038, 1051–1052, 82 S.W.2d 79, 85, and the trial chancellor, in weighing the equities, was entitled to consider whether a decree of specific performance would work an unconscionable advantage to the plaintiff or would result in injustice. Frederich v. Union Electric Light and Power Co., supra, 336 Mo. at 1051–1052, 82 S.W.2d at 85; Rockhill Tennis Club of Kansas City v. Volker, 331 Mo. 947, 969, 56 S.W.2d 9, 19[8]; Anno., supra, 65 A.L.R. at 69. The record before us is subject to the in-

3. State ex rel. State Highway Commission v. Hammel, Mo., 372 S.W.2d 852, 853–854; City of Moberly v. Hogan, 317 Mo. 1225, 1230, 298 S.W. 237, 239 [1]; Herman v. Board of Park Commissioners, 200 Iowa 1116, 206 N.W. 35, 36–37 [4]; Burke v. Oklahoma City, Okl., 350 P.2d 264, 267–268 [3]; 1 Nichols, Eminent Domain, Section 1.141 [4], pp. 31–33 (Rev. 3rd ed. 1964).

ference that before the plaintiff undertook condemnation, it attempted to purchase Mrs. Fowlkes' land rights for $2,000.00, advising her that it had the power of eminent domain and would use it if she refused. The defendant refused to sell, and the District thereupon exercised its right of condemnation. Before it fully exercised that right, however, the District again attempted to acquire the necessary land rights from the defendant, and, according to its interpretation of the case, acquired the right to a conveyance of the land before the decree in condemnation was taken. However, the District did not seek any conveyance subsequent to Mrs. Fowlkes' refusal to perform or act on its communication of May 22, 1964. Instead, upon representation that it could not agree with her upon the proper compensation to be paid, it obtained a decree in condemnation on June 25, 1964. The petition alleging the attempt to agree, and the decree finding that the parties had been unable to agree, were introduced in evidence upon this trial. As we have recited, the plaintiff looked upon this action as "an alternate to the exceptions." The commissioners appointed assessed the defendant's damages at the sum of $2,800.00, and the plaintiff paid this sum to the clerk of the circuit court. Thereafter, both the plaintiff and defendant filed exceptions, requesting an assessment of damages by a jury. Then on December 10, 1964, the plaintiff filed this action, seeking, among other things, to compel the defendant to dismiss her exceptions filed after the report of commissioners was accepted. No evidence was introduced in this case about the actual value of the land taken.

██ ██ The record is thus subject to the further inference that the plaintiff District deferred asking specific enforcement under its contract, indeed represented that it could not agree upon the proper amount of compensation,[4] and took no further action upon its proposal until it had ascertained that the commissioners' award was in excess of the amount it had agreed to pay. The District then sought to foreclose a jury trial on the amount of damages, a right generally afforded defendants in condemnation cases, Mallette v. United States, 8 Cir., 137 F.2d 95, 97[3], having blown hot and cold, as it were, as to whether it had an agreement or not, and having waited to see whether its condemnation action or its action for specific performance would be most advantageous. Equity does not permit a party to a contract to refrain from asserting his rights until it is clear the bargain is to his advantage, and then allow specific performance, if the delay has been prejudicial to the defendant. Suhre v. Busch, 343 Mo. 170, 191, 120 S.W.2d 47, 56[9]; 49 Am.Jur. Specific Performance, Section 76, pp. 93–94. We have the view that the trial chancellor could reasonably have found that plaintiff's delay in asserting its right to specific performance gave rise to a change of circumstances making it inequitable to grant specific performance, and could reasonably have exercised his discretion against the entry of such decree.

██ Such considerations aside, the trial court made its finding on conflicting evidence, and we should sustain its judgment unless the proof is palpably insufficient in clarity and cogency to warrant its finding. Cossairt v. Reich, Mo., 370 S.W.2d 291, 294[2]. One of the defendant's principal arguments is that there was never any "meeting of the minds," because the parties never actually agreed upon the true consideration to be paid by the plaintiff. It is true, as the respondent argues, that to make a valid contract the "minds of the

---

**4.** We do not rule on the necessity of making an attempt to agree upon the amount of compensation to be paid in this case. The applicable procedural statutes do not appear to impose any such duty. See Section 247.210; Sections 88.010 and 88.-013; Mayor, Councilmen and Citizens of Liberty v. Boggess, Mo., 321 S.W.2d 677, 680 [2]; City of Kirkwood v. Venable, 351 Mo. 460, 468, 173 S.W.2d 8, 13 [10].

contracting parties must meet upon and assent to the same thing in the same sense and at the same time," Macy v. Day, supra, 346 S.W.2d at 558[1], and it is also fundamental that unilateral mistake of fact is a well-recognized ground for denial of specific performance. Frederich v. Union Electric Light and Power Co., supra, 336 Mo. at 1051–1052, 82 S.W.2d at 85[6]; Anno., 15 L.R.A.,N.S., 81 (1908); 5 Williston, Contracts, Sections 1425 and 1427, pp. 3989–3991, 3996–3998 (Rev. ed. 1937).

In this particular and respect, the essential controverted point is whether Mrs. Fowlkes intended, and authorized, her first attorney to compromise the amount of damages due her for the gross sum of $2,000.00, or whether she understood, and intended, that she should receive such settlement as would realize her the net sum of $2,000.00, after the payment of her attorney's fee and other expenses. The attorney originally retained by the defendant testified, as we have stated, that he explained the nature of the proposed settlement (if that is the proper term) in clear and unambiguous terms; the import of his evidence was that Mrs. Fowlkes had at first agreed, but had later repudiated her agreement. However, the defendant testified that she had already been offered the sum of $2,000.00 for her land by the District before the condemnation action was commenced, and that her instruction to the attorney had been that " * * * I was to get $2,000.00 net in payment for that acre." Later, after her attorney had communicated with the District, and the check and conveyances were sent to her, the defendant discovered that she was expected to pay her attorney from the gross sum of $2,000.00, and that she would not realize the sum for which she was willing to compromise. Mrs. Fowlkes' testimony also indicates that she had already paid for the water line, that she did not know that "the pump was to be on my place," and it is inferable from her testimony that she did not understand that "they would have the right to dig in my land all up and down the length of the farm."

It is true, as the appellant says, that much of the defendant's testimony concerning the nature of her expenses, other than her attorney's fee, is vague, but we cannot agree that her evidence is incredible and unworthy of belief. It must be remembered that there was no single written memorandum of this agreement; this is not a case in which the defendant claims that she signed a written instrument without understanding it. Much of the communication between the defendant and the District, and the communication between her and her attorney, was oral, and we think it was for the trial court to decide whether these communications were sufficiently ambiguous that the defendant misunderstood the nature of the installation which the District proposed to locate on her property, and whether the defendant agreed to compromise in the mistaken belief that she was to receive a net sum of $2,000.00, rather than the gross sum of $2,000.00. Mrs. Fowlkes also testified that she had already paid for the installation of her water line, and her evidence, if accepted, was that she was expected to compensate her tenant for his cotton crop, or that part of it which was destroyed by the plaintiff's activity. There is precedent for the proposition that when the vendor, because of ambiguity in the communication of an offer, or acceptance, is misled to his detriment as to the true consideration to be paid, specific enforcement of a contract to convey land may be refused. Werner v. Rawson, 89 Ga. 619, 15 S.E. 813, 814–815[1]; Smith v. Toth, 61 Ind.App. 42, 111 N.E. 442, 444–445[5]; Burkhalter v. Jones, 32 Kan. 5, 3 P. 559, 564–565. But this case shows something more than that. We think it could reasonably be found that the defendant understood that she was to receive the net sum of $2,000.00 when she agreed to the compromise, and that she did not understand the full nature and extent of the taking which the plaintiff proposed. The mistake of fact sufficient to justify refusal of specific performance need not be such as would avoid a contract at law, or even such as would justify rescission or reforma-

**650**

tion of the contract. A mistake, it is said, which is entirely the defendant's own, or that of his agent, and for which the plaintiff is not directly or indirectly responsible, may defeat specific performance. Jasper Co. Electric Ry. Co. v. Curtis, 154 Mo. 10, 24–25, 55 S.W. 222, 226. In this instance, we cannot say that the proof offered by the defendant was palpably insufficient in clarity and cogency to warrant the trial court's finding, and the judgment is therefore affirmed.

STONE, P. J., concurs.

TITUS, J., not participating, because not a member of the court when this cause was submitted.